UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TONY PERKINS,

            Plaintiff,

    v.                                                                24-CV-620-LJV
                                                                        ORDER
HON. LOUIS STANTON,

            Defendant.

_____


      The pro se plaintiff, Tony Perkins, was a prisoner confined at the Monroe County

Jail when he filed this action.  He asserts claims under 42 U.S.C. § 1983, alleging that

his constitutional rights were violated in connection with a parole hearing.  *See* Docket

Item 1 at 3-4.[1]  More specifically, he alleges that his Eighth and Fourteenth Amendment

rights were violated when the terms of his parole revocation did not reflect the plea offer

to which he agreed.  *Id.*  Perkins also moved to proceed in forma pauperis ("IFP")—that

is, as a person who should have the prepayment of the ordinary filing fee waived

because he cannot afford it.  Docket Item 2.

      Because Perkins meets the statutory requirements of 28 U.S.C. § 1915(a) and

has filed the required authorization and certification, Docket Item 2, the Court grants his

motion to proceed in forma pauperis.  Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and

1915A(a), the Court screens his complaint.  And for the reasons that follow, Perkins's

---

[1] Page numbers in docket citations refer to ECF pagination.

claims will be dismissed under sections 1915(e)(2)(B) and 1915A unless he files an amended complaint correcting the deficiencies addressed below.

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the complaint (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2).

Generally, the court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639; *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A pro se complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (italics omitted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999))). But leave to amend pleadings may be denied when any amendment would be "futile." *Cuoco*, 222 F.3d at 112.

I.    **SCREENING THE COMPLAINT**

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a pro se complaint "must plead 'enough facts to state a claim to relief that is plausible on its face,'" *Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In other words, although a pro se complaint need not provide every last detail in support of a claim, it must allege some facts that support the claim.  *See id.* (concluding that district court properly dismissed pro se complaint under section 1915(e)(2) because complaint did not meet pleading standard in *Twombly* and *Iqbal*).  And even pro se pleadings must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004), and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Perkins has sued "Hon. Louis Stanton," who he says is an administrative law judge in the New York State parole system, for violating his Eighth and Fourteenth Amendment rights.  *See* Docket Item 1 at 2, 4 (identifying Stanton's job title as "[a]dministrative [l]aw [j]udge/N.Y.S. [p]arole" and alleging that Perkins's Eighth and

Fourteenth Amendment injuries occurred at a "[p]arole [h]earing").  A liberal reading of the complaint tells the following story.

On April 29, 2024, Stanton presided over a hearing that, given what Perkins alleges in his complaint, may have been a parole revocation proceeding.  *See id.* at 4. While presiding over that hearing, Stanton "offered [Perkins] a plea deal . . . on the court's record."  *Id.*  If Perkins "agreed to" the offer, he "would be released from incarceration at [the] 'end of August or early September 2024,' which would also conclude [his] 'max[]out' date for parole."  *Id.*

Perkins, who was "accompanied by defense counsel" at that proceeding, "took the deal."  *Id.*  But, after doing so, his release date did not change to reflect the terms of the agreement, and he was scheduled to be released months later in February 2025. *Id.* ("[M]y release [date] never changed and is still set for my original 'max[]out' date of 2/2/2025.").

Perkins requests "$250,000 or what the court deems proper" as relief.  *Id.* at 5.

## II.  SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

Section 1983 suits may be brought against government officials in both their official and individual capacities.  As the Second Circuit has explained, "[i]n an official capacity suit, 'the real party in interest is the governmental entity and not the named official.'"  *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (alteration omitted) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)), *aff'd*, 592 U.S. 43 (2020).  "By contrast, individual capacity suits 'seek to impose individual liability upon [ ] government officer[s] for actions under color of law.'"  *Id.* (alterations omitted) (quoting *Hafer*, 502 U.S. at 25).  Here, Perkins sues Stanton for damages in his individual capacity.  *See* Docket Item 1 at 2.

"It is well settled that judges generally have absolute immunity from suits for money damages for their official actions."  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).  Judicial immunity is not simply immunity from damages, however; it is immunity from suit altogether.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  This is to ensure "that a judicial officer, in exercising the authority vested in [that judge], shall be free to act upon [the judge's] own convictions, without apprehension of personal consequences."  *Bradley v. Fisher*, 80 U.S. 335, 347 (1871).  Judicial immunity therefore does not give way even to "allegations of bad faith or malice."  *Mireles*, 502 U.S. at 11.

Judicial "immunity is overcome in only two sets of circumstances."  *Id.*  "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity."  *Id.* (citations and italics omitted).  "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Id.* at 12 (citations omitted).

"[A]cts arising out of, or related to, individual cases before a judge are considered judicial in nature." *Bliven*, 579 F.3d at 210. Moreover, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Those principles "extend[] to administrative officials performing functions closely associated with the judicial process because the role of the hearing examiner or administrative law judge . . . is functionally comparable to that of a judge." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (alterations, citations, and internal quotation marks omitted). In fact, absolute judicial immunity applies to "officials who preside over parole revocation hearings." *Denslow v. NYPD-77th Precinct*, 2011 WL 1348362, at *3 (Apr. 8, 2011).

The crux of Perkins's claims is that: (1) "Judge Stanton" handled Perkins's parole hearing and "offered [him] a plea deal"; (2) if Perkins accepted the offer, "[he] would be released from incarceration at '[the] end of August or early September 2024'";[2] (3) Perkins "took the deal offered"; but (4) Perkins's "release [date] never changed" from February 2025 even after he accepted the deal. *See* Docket Item 1 at 4.

The conduct about which Perkins complains seems to relate directly and explicitly to "acts arising out of, or related to, [an] individual case[] before" Stanton—that is, Perkins's parole hearing. *See Bliven*, 579 F.3d at 210. Moreover, accepting an admission to a parole violation is akin to taking and entering a guilty plea—an act that is fundamentally judicial in nature. *See Rosa v. Alexander*, 2019 WL 441156, at *3 (D.

---

[2] Perkins does not allege who told him that his release date would change if he accepted the plea offer but, drawing all inferences in his favor, *see Larkin*, 318 F.3d at 139, the Court presumes for the purposes of screening his complaint that it was Stanton.

Conn. Feb. 4, 2019) (collecting cases).  And based on the complaint's explicit allegation

that Stanton's job title is "[a]dministrative [l]aw [j]udge/N.Y.S. [p]arole," Docket Item 1 at

2, it also seems that presiding over a parole hearing would be precisely within Stanton's

jurisdiction.  *See Boddie v. New York State Div. of Parole*, 2009 WL 1033786, at *6

(E.D.N.Y. Apr. 17, 2009) ("In presiding over plaintiff's parole revocation hearing and

issuing her decision, [administrative law judge] was obviously acting within her judicial

capacity, as well as within her jurisdiction.").

And even if Stanton said something incorrect to Perkins about the effect of the

admission—indeed, even if Stanton misled Perkins with malice—that still would not

overcome Stanton's absolute judicial immunity.  *See Montero*, 171 F.3d at 761

("[A]bsolute immunity applies to a judicial function, like revoking parole, even where

such action 'was in error' or 'was done maliciously.'" (citation omitted)); *cf. Webb-Payne

v. Smith*, 2011 WL 222339, at *3 (E.D.N.Y. Jan. 21, 2011) (individual New York State

Division of Parole defendants acting in quasi-adjudicative capacity were entitled to

absolute judicial immunity "even if the[ir] determination" not to release plaintiff on his

scheduled release date "was erroneous").

In sum, the complaint suggests that Perkins's injuries stem from an action taken

by Stanton that was judicial in nature, that was within Stanton's jurisdiction, and that

occurred during a proceeding held before Stanton.  The Court is thus inclined to dismiss

Perkins's claims because of absolute judicial immunity.[3]  The allegations in Perkins's

---

[3] The Court notes that Perkins's claims also may be barred by the favorable
termination rule articulated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477
(1994).  Under *Heck*, unless a plaintiff proves that his conviction "has been reversed on
direct appeal, expunged by executive order, declared invalid by a state tribunal . . . , or
called into question by a . . .  writ of habeas corpus," the plaintiff's civil rights claim

complaint are so sparse as to the nature of the proceeding he references and exactly what Stanton told him, however, that the Court cannot make that determination with certainty. In other words, the Court knows so little about what took place at this proceeding and what type of proceeding it was—namely, whether it was a parole revocation hearing or some other type of proceeding entirely—that it cannot yet rule out the possibility, however slim it may be, that Stanton was not acting in a judicial capacity or within his jurisdiction when the events underlying Perkins's complaint took place.

For that reason, and in light of Perkins's pro se status, *see generally Cuoco*, 222 F.3d at 112, the Court will permit him to amend his complaint to assert, if possible, a viable section 1983 claim against Stanton in accordance with the above.

---

should be dismissed if a judgment for the plaintiff "would necessarily imply the invalidity of his conviction." *Id*. at 487. "*Heck* and its 'favorable termination' rule appl[y] to [s]ection 1983 actions that challenge the fact or duration of confinement based on the revocation of parole." *Hannah v. Davis*, 2008 WL 516750, at *2 (W.D.N.Y. Feb. 25, 2008) (italics added). "A parolee challenging a parole revocation must therefore demonstrate that his parole revocation has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 45 (E.D.N.Y. 2018) (quoting *Heck*, 512 U.S. at 486-87). To the extent that Perkins is alleging that he would not have accepted the plea offer but for what he was told about his release date, his claims appear to challenge "the fact or duration of a confinement based on the revocation of parole," *see Hannah*, 2008 WL 516750, at *2. And because he provides no evidence that the revocation of his parole (if that is indeed what occurred at the hearing before Stanton) has been reversed or otherwise called into question, *Heck* appears to bar his claims. Any amended complaint Perkins files should thus plead facts showing why his claims are not barred by *Heck*.

**CONCLUSION**

Because Perkins meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization, the Court grants his request to proceed in forma pauperis.  But his complaint will be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) unless he files an amended complaint **within 45 days of the date of this order** that corrects the deficiencies noted above and otherwise complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Perkins is advised that an amended complaint is intended to ***completely replace*** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect."  *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)*; see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Therefore, any amended complaint ***must include all allegations against each of the defendants*** so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

**ORDER**

In light of the above, IT IS HEREBY

ORDERED that Perkins's motion to proceed in forma pauperis, Docket Item 2, is GRANTED; and it is further

ORDERED that Perkins may amend his complaint **within 45 days of the date of this order**; and it is further

ORDERED that the Clerk of the Court shall send to Perkins with this order a copy of the original complaint, a blank section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Perkins does not file an amended complaint correcting the deficiencies noted above **within 45 days of the date of this order**, the complaint will be dismissed without further order and the Clerk of the Court shall close the case; and it is further

ORDERED that if the complaint is dismissed because Perkins does not file an amended complaint correcting the deficiencies noted above **within 45 days of the date of this order**, this Court hereby certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals in forma pauperis is denied.  *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal in forma pauperis should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure; and it is further

ORDERED that Perkins shall notify the Court in writing if his address changes. The Court may dismiss the action if Perkins fails to do so.

SO ORDERED.

Dated:    July 17, 2025
            Buffalo, New York


                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE